PEOPLE v NUSS

Docket Nos. 59780, 59781. Argued March 7, 1978 (Calendar No. 2).—
Decided February 5, 1979.

Ralph C. Nuss was charged in 1966 with the first-degree murder
of Tom Brown. The defendant petitioned the circuit court for a
determination that he was a criminal sexual psychopath. He
also demanded a speedy trial on the Brown murder charge and
in the murder of Arlan Withrow, which had been charged in
Federal District Court and dismissed there for lack of jurisdic-
tion but which had not been charged in the state court. Defend-
ant was committed to Ionia State Hospital. In 1973, the defend-
ant was paroled by the hospital superintendent, and in 1975
the Washtenaw County Prosecuting Attorney reinstituted the
Brown murder charge and also charged Nuss with the Withrow
murder. Defendant's motion to quash the informations and
dismiss the two charges of first-degree murder was denied by
the Washtenaw Circuit Court, William F. Ager, J. The Court of
Appeals, M. F. Cavanagh, P.J., and R. M. Maher, J. (Beasley, J.,
dissenting), reversed on the ground that the defendant had
been denied a speedy trial in the Withrow murder and that
prosecution for the Brown murder was barred by the criminal
sexual psychopath act (Docket Nos. 26767, 26768). The people
appeal. *Held:*

1. The circuit court in the matter of the Brown murder made
a final and binding determination that the defendant was a
criminal sexual psychopathic person and committed him to the
Department of Mental Health pursuant to the former criminal

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 20 Am Jur 2d, Courts §§ 105, 153.
    21 Am Jur 2d, Criminal Law § 378.
    73 Am Jur 2d, Statutes §§ 385, 420.
[2, 3] 73 Am Jur 2d, Statutes §§ 347-355, 420-422.
    Statutes relating to sexual psychopaths. 24 ALR 2d 350.
[5, 6] 41 Am Jur 2d, Incompetent persons §§ 49-54.
    73 Am Jur 2d, Statutes §§ 347-355, 420-422.
    Statutes relating to sexual psychopaths. 24 ALR 2d 350.
[7, 8, 9] 21 Am Jur 2d, Criminal Law §§ 243, 248, 251, 252.
[10] 29 Am Jur 2d, Evidence § 253.

sexual psychopath act. That act provided that a person who is found to be a criminal sexual psychopath may not thereafter be tried for an offense with which he originally stood charged in the committing court at the time the petition requesting a criminal sexual psychopath hearing was filed. Accordingly, the state is statutorily barred from prosecuting defendant for the Brown murder unless a showing can be made that the statutory bar to prosecution is somehow now inoperative.

2. All statutes are prospective in their application unless the contrary clearly appears from the context of the statute itself. There is nothing in the language of the act which repealed the criminal sexual psychopath act to justify a construction of retrospective application.

3. The argument that the Wayne Circuit Court's judgment in another case, which held that the criminal sexual psychopath act is unconstitutional in its confinement and release provisions, is binding in this case is without merit. That decision may have been binding upon the parties to it and arguably all other criminal sexual psychopathic persons then being detained in Wayne County, but defendant Nuss was in neither of these positions. He did not consent to the jurisdiction of the Wayne Circuit Court and was not a party to those proceedings, being confined at the time in the Ionia State Hospital. The Supreme Court has previously entertained and rejected a challenge to the constitutionality of the criminal sexual psychopath act. The defendant was not released from his commitment following the Wayne County proceedings in the other case but was continued in confinement until, in due course and in compliance with the release provisions of the criminal sexual psychopath act, the hospital superintendent determined that the defendant had so far recovered from his psychopathy that he could be paroled. The statutory bar which was operative at the time of the defendant's commitment precludes subsequent criminal proceedings against a person finally found to be a criminal sexual psychopath for those offenses with which he stood charged or convicted at the time the petition requesting the criminal sexual psychopath determination was filed. Because the defendant was charged with the murder of Brown at the time his petition requesting the criminal sexual psychopath determination was filed, the state is barred from trying him for the Brown murder.

4. Although a murder charge in the Withrow matter was pending against the defendant at the time the criminal sexual psychopath petition was filed, the charge had been brought in the Federal court rather than in the state circuit court which

committed him as a sexual psychopath. Consequently, later criminal prosecution of the defendant for the Withrow murder was not barred by the former criminal sexual psychopath act. However, principles of due process may require dismissal of the charge against him if there is evidence that an unjustified delay between the commission of the Withrow offense and the filing of the information substantially prejudiced his right to a fair trial.

5. In 1967, before the final criminal sexual psychopath determination was made in his case, the defendant demanded a speedy trial in both the Withrow and the Brown cases. Despite this request and the fact that the Washtenaw County prosecutor already had possession of defendant's confession in the Withrow murder, the prosecutor did not charge defendant with Withrow's murder until January 17, 1975, almost eight years later, more than a year and a half after his parole from confinement as a criminal sexual psychopath. Aside from a practical consideration that the defendant was already being detained in the other matter, the prosecutor suggests no justification for his failure to file charges against Nuss, especially in view of his demand to be tried speedily for the Withrow killing. Nor is there any allegation on the part of the prosecutor that there was insufficient evidence upon which to proceed. In fact, given the strength of the case which derives from the defendant's detailed confession, the prosecutor had little to lose from the delay. Therefore, the Court is persuaded that the lengthy delay between the offense and the filing of the information was unjustifiable.

6. The witnesses who testified at the preliminary examination concerning defendant's confession admitted that they could not recall many of the circumstances surrounding the defendant's statement, including the number of police officers who were present. In addition, Dr. Alexander Dukay, one of the psychiatrists who examined defendant and testified at defendant's criminal sexual psychopath hearing, is dead. Even if it be assumed that Dr. Dukay's testimony is now admissible as former testimony recorded, its probative value is minimal. Dr. Dukay testified at the hearing that defendant Nuss was reacting to an irresistible impulse, a form of insanity. But the witness was not examined fully upon that point, which would now be absolutely crucial to a successful defense. The purpose for which Dr. Dukay's expertise was sought and his testimony received in 1967 was wholly different than would be the case in a trial on the charges today. Moreover, the probative force of the testimony of an expert being examined and cross-examined

before the jury is immeasurably greater than that which is generated by the reading of an eight-year-old transcript of his testimony dealing with a distinctly different aspect of the defendant's mental state. For all practical purposes, Dr. Dukay's death has deprived the defendant of probably favorable testimony crucial to his defense.

7. Any expert testimony concerning the defendant's 1967 mental state which is obtained and presented in 1979 is of severely diminished value. Passage of time makes proof of any fact more difficult and when the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced. When the passage of time is eight years, during which the subject has undergone six years of treatment and has been pronounced recovered, the difficulty of proof of the earlier mental state is still greater.

8. Finally, and most importantly, if the defendant had been charged with the murder of Withrow within a reasonable time after the commission of the offense, he would in all likelihood' have successfully invoked the provisions of the criminal sexual psychopath act and future criminal proceedings on the Withrow charge would have been barred. The evidence suggests that the circumstances surrounding both murders were extremely similar and the defendant had already been found to be a criminal sexual psychopath in connection with the Brown murder. The defendant is now denied former statutory protections which otherwise would have been available to him. Therefore, the defendant was substantially prejudiced by the eight-year delay. This prejudice to defendant was the direct consequence of the prosecutor's failure to reasonably charge defendant with the Withrow murder. The substantial prejudice resulting from the unjustifiable delay in commencing criminal proceedings against the defendant precludes a trial on the Withrow matter.

The decision of the Court of Appeals is affirmed.

75 Mich App 346; 254 NW2d 883 (1977) affirmed.

1. STATUTES — PROSPECTIVE APPLICATION.

All statutes are prospective in their application unless the contrary clearly appears from the context of the statute itself.

2. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — STATUTES — REPEAL.

There is nothing in the language of the statute which repealed the criminal sexual psychopath act to justify a construction of

retrospective application of the repealing legislation (1968 PA 143).

3. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS —
   STATUTES — CONSTITUTIONAL LAW — JUDGMENT — PARTIES.

   A decision by the Wayne Circuit Court that the criminal sexual psychopath act is unconstitutional in its confinement and release provisions may have been binding upon the parties to it and arguably all other criminal sexual psychopathic persons then being detained in Wayne County, but it did not apply to a defendant confined at the time in the Ionia State Hospital who did not consent to the jurisdiction of the Wayne Circuit Court and was not a party to those proceedings (MCL 780.501 *et seq.;* MSA 28.967[1] *et seq.).*

4. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS —
   STATUTES.

   The statutory bar of the criminal sexual psychopath act which was operative at the time a defendant, who was accused of murder, was committed as a criminal sexual psychopath precludes subsequent criminal proceedings against him for those offenses with which he stood charged or convicted in the committing court at the time the petition requesting the criminal sexual psychopath determination was filed (MCL 780.508; MSA 28.967[8]).

5. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS —
   STATUTES.

   Prosecution of a defendant on a charge of murder which was not pending in the circuit court in which a petition for determination that defendant was a criminal sexual psychopath was filed was not barred by an adjudication by that court that the defendant was a criminal sexual psychopath under the criminal sexual psychopath act (MCL 780.508; MSA 28.967[8]).

6. CRIMINAL LAW — INDICTMENT AND INFORMATION — SPEEDY TRIAL
   — DUE PROCESS — FAIR TRIAL.

   Principles of due process may require dismissal of the charge against an accused if there is evidence that an unjustified delay between the commission of the offense and the filing of the information substantially prejudiced his right to a fair trial (US Const, Am XIV; Const 1963, art 1, § 17).

7. HOMICIDE — INDICTMENT AND INFORMATION — SPEEDY TRIAL.

   The lengthy delay between a homicide and the filing of the information against the accused defendant was unjustified where the defendant, who was in the process of being adjudged

as a criminal sexual psychopath in another matter, notified the circuit court that Federal charges in connection with the homicide had been dropped for lack of Federal jurisdiction and he demanded a speedy trial in circuit court for the homicide; the prosecuting attorney had the defendant's confession in the homicide but did not charge the defendant with the homicide until almost eight years later, more than a year and a half after his parole from confinement as a criminal sexual psychopath; and the prosecutor suggests no justification for his failure to file the homicide charges against the defendant other than the practical consideration that the defendant was detained pursuant to a commitment as a criminal sexual psychopath.`

8. HOMICIDE — INDICTMENT AND INFORMATION — SPEEDY TRIAL — PREJUDICE — DUE PROCESS.

A defendant was substantially prejudiced by an unjustified eight-year delay in charging him with a homicide where he was denied protection of the criminal sexual psychopath act which otherwise would have been available to him; one of the psychiatrists who examined the defendant and testified at a hearing on a petition to declare him a criminal sexual psychopath in connection with another matter had since then died and his previously recorded testimony from the hearing, even if admissible as evidence in the homicide trial, was not germane to a defense of insanity; and the defendant had undergone six years of treatment since the homicide and had been pronounced recovered so that the difficulty of proof of the earlier mental state was still greater.

9. CRIMINAL LAW — EVIDENCE — EXPERT WITNESSES — MENTAL STATE.

Expert opinion testimony concerning a defendant's mental state which is obtained and presented eight years later is of severely diminished value; passage of time makes proof of any fact more difficult, but when the fact at issue is as subtle as a mental state the difficulty is immeasurably enhanced.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*O'Brien, Moran & Dimond* and *O'Hagan & Conlin* for defendant.

RYAN, J. On November 15, 1966, Ralph Nuss was arrested on a warrant charging him with gross indecency between males. After being advised of his *Miranda*[1] rights he was transported to the Washtenaw County jail where, later in the evening after once again being given *Miranda* warnings, he made and signed a written statement confessing to the murder of Thomas Brown and Arland Withrow.

On the following day, on the basis of his written statement to the effect that he killed Withrow on a Federal reservation in Milan, Michigan, Nuss was charged with the Withrow murder in the United States District Court. On December 7, 1966, he was charged with the Brown murder in the state court in Washtenaw County.

On January 10, 1967, after further FBI investigation[2] disclosed that the Withrow killing did not occur upon a Federal reservation, the Federal charge was dismissed, it appearing that the Federal court was without jurisdiction in the matter.

State authorities took no action at that time with respect to the Withrow killing.[3]

Three days later, on January 10, 1967, Nuss filed a petition in the Washtenaw Circuit Court, pursuant to MCL 780.501-780.509; MSA 28.967(1)-

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] FBI agents learned that Nuss made a statement to a state police official that the Withrow killing took place not on the Federal reservation but in Augusta Township of Washtenaw County.

[3] The Washtenaw County authorities' earlier deferral to Federal authorities was apparently a matter of policy since state authorities had jurisdiction to prosecute whether or not the killing took place on a Federal reservation. MCL 3.341; MSA 4.61.

28.967(9), asking the court to conduct a hearing to determine whether he was a criminal sexual psychopath.[4] A hearing was conducted according to the provisions of the statute and on March 29,

[4] The Criminal Sexual Psychopath Statute, as it read in Compiled Laws of 1948, provides:

"Sec. 1. Any person who is suffering from a mental disorder and is not insane or feeble-minded, which mental disorder has existed for a period of not less than 1 year and is coupled with criminal propensities to the commission of sex offenses is hereby declared to be a criminal sexual psychopathic person.

"Sec. 2. Jurisdiction of criminal sexual psychopathic persons charged with criminal offense is vested in the circuit courts of the state, the recorders court of the city of Detroit, and the superior court of the city of Grand Rapids.

"Sec. 3. When any person is charged with a criminal offense, or has been convicted of or has pleaded guilty to such offense and has been placed on probation, or has been convicted or pleaded guilty to such offense but has not yet been sentenced, and it shall appear that such person is a criminal sexual psychopathic person, then the prosecuting attorney of such county, or the attorney general, or some one on behalf of the person charged, may file with the clerk of the court in the same proceeding wherein such person stands charged with, or has been convicted of, or has pleaded guilty to such criminal offense, a statement in writing setting forth facts tending to show that such person is a criminal sexual psychopathic person.

"Sec. 4. Upon the filing of such statement by the prosecuting attorney or the attorney general the court shall, or if filed on behalf of the accused the court may, appoint 2 qualified psychiatrists to make a personal examination of such alleged criminal sexual psychopathic person who shall file with the court a report in writing of the results of their examination together with their conclusions. Said report shall be open to the inspection of the counsel for the accused, but shall not be competent evidence in any other proceeding against accused except the hearing to inquire into his alleged psychopathy. Said alleged psychopath shall be required to answer the questions propounded by such psychiatrists under penalty of contempt of court. In the event that both of such psychiatrists in such report state their conclusions to the effect that such person is a criminal sexual psychopathic person, then proceedings shall be had as provided in this act prior to a trial of such person upon the criminal offense with which he then stands charged, or prior to sentence if he then stands convicted and has not been placed on probation, or prior to completion of probation sentence.

"Sec. 5. Upon a hearing held for that purpose the court without a jury, unless a jury is demanded prior to said hearing and within 15 days after the filing of the last of said reports, shall ascertain whether or not such person is a criminal sexual psychopathic person. Upon such hearing it shall be competent to introduce evidence of the commission by such person of any number of similar crimes together with the record of the punishment inflicted therefor. If such person is

1967, the court found the defendant to be a criminal sexual psychopath and ordered him committed to the custody of the state hospital commission for confinement in a state hospital.

On March 14, 1967, the same day the defendant filed his petition for a criminal sexual psychopath

determined to be a criminal sexual psychopathic person, then the court shall commit such person to the state hospital commission to be confined in an appropriate state institution under the jurisdiction of either the state hospital commission or the department of corrections until such person shall have fully and permanently recovered from such psychopathy.

"Sec. 6. The state hospital commission shall have the right to release such person upon parole to such persons and under such conditions as his condition, in the judgment of the state hospital commission, merits.

"Sec. 7. Such criminal sexual psychopathic person shall be discharged only after he shall have fully recovered from such psychopathy. At any time, when he shall appear to have so recovered, a petition in writing setting forth the facts showing such recovery may be filed with the clerk of the court by which he was committed and such court shall proceed to determine whether or not he has fully recovered from such psychopathy. Jury trial of such issue may be had, if demanded before the trial of said issue and within 15 days after the filing of such petition. If, following such hearing, such person is found to have fully recovered from such psychopathy, then the court shall order such person to be discharged from the custody of the state hospital commission. In the event such person is found to have not fully recovered from such psychopathy, then the court shall order such person to be returned to the custody of the state hospital commission to be held under the previous commitment of such person.

"As long as such psychopath shall remain in the custody of the department of mental health of the commission he shall be examined at least once a year by 2 psychiatrists appointed by the commission who shall report in writing their findings including therein any facts tending to show appearance of recovery, to the committing court and to the commission. These reports shall thereafter be available to such committed person's attorney for use in petitions for discharge, and also as evidence at any hearings on such petitions if so requested by petitioner, by the prosecutor or by the court.

"Sec. 8. No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition.

"Sec. 9. The state shall defray all expenses of such person while so confined in a state institution and may recover the amount so paid from such person."

hearing, he also filed a "Demand for Speedy Trial" in the pending Brown murder case. As the circuit court declared in its certified concise statement of the proceedings and facts:

"That petition formally advised the prosecution and the court of the status of the Federal charge; attached a copy of the Federal dismissal; noted that the prosecutor already had possession of confessions in both the Brown and Withrow matters; alleged that since under the criminal sexual psychopath statute appellee had to present evidence of his sexual psychopathic condition, and since he would of necessity present evidence of both homicides, he was being placed in a position of having to waive constitutional rights to be free from self-incrimination in order to make use of the statute; and concluded by demanding a speedy trial in the Withrow matter."

Despite his demand for speedy trial, no action was taken by state authorities to prosecute Nuss until January 7, 1975, some eight years later.

The year following Nuss' commitment as a criminal sexual psychopath, the Legislature repealed the Criminal Sexual Psychopath Act by 1968 PA 143. Under § 1 of the new legislation, persons who had been committed as criminal sexual psychopaths under the former act were continued in confinement in state institutions under the jurisdiction of the state Department of Mental Health.

Because it was unclear in the new legislation where jurisdiction lay to conduct hearings to ascertain whether persons committed as criminal sexual psychopaths had recovered, this Court issued Administrative Order 1969-4 which provided:

"It appearing upon repeal of PA 1939, No 165, that jurisdiction to hear petitions to test the recovery of persons committed as criminal sexual psychopaths un-

der the provisions of said act remains unresolved, that proceedings in various courts wherein relief has been sought have been dismissed with the result that a situation has continued for several months wherein the proper forum for reviewing the propriety of continued custody of persons committed under the provisions of said law remains in question, that protection of the basic rights of such persons and the uninterrupted administration of justice requires designation of a proper forum for hearing said matters until such time as the legislature shall provide clarification, now therefore * * *

"It is ordered, that until such time as there is further legislative clarification of jurisdiction of proceedings for testing recovery of persons committed under the provisions of said PA 1939, No 165, as amended, jurisdiction shall continue in accordance with the provisions of section 7 of said act * * *." 382 Mich xxix (1969).

The order remains in effect.

On April 9, 1973, a three-judge panel of the Third Judicial Circuit Court (Wayne County) found the commitment and release provisions of the Criminal Sexual Psychopath Act to be unconstitutional and ordered the release of Louis Smith, the appellee in the companion case of *People v Smith, ante,* 405 Mich 418; 275 NW2d 466 (1979), which is decided today. Smith was then being temporarily detained in Wayne County during the pendency of a civil action in which he was the named plaintiff.[5]

Prior to issuance of the trial court opinion in *Doe v Dep't of Mental Health,* state mental health authorities afforded Nuss an opportunity to be transferred to Northville State Hospital which was located in Wayne County, ostensibly to afford him the benefit of the widely anticipated ruling of

[5] *John Doe v Dep't of Mental Health,* (Wayne County Docket No. HC-73-19434 AW).

In order to protect Smith from inappropriate publicity in connection with the litigation, he was identified as John Doe.

unconstitutionality of the Criminal Sexual Psychopath Act by the trial court panel. The mental health authorities informed Nuss that if the Wayne Circuit Court held the Criminal Sexual Psychopath Act unconstitutional, the ruling would only apply to those criminal sexual psychopathic persons detained in Wayne County. Nonetheless, Nuss chose to remain in the Ionia State Hospital to continue his treatment.

On July 13, 1973, defendant was paroled from Ionia State Hospital by the hospital superintendent after the latter made the statutory determination that "there are reasonable grounds to believe that [Nuss] has recovered from [his] psychopathy and is not a menace to the safety of himself and others". MCL 330.35b; MSA 14.825(2).

Approximately a year and a half later, following release of the Court of Appeals decision in *People v Smith, supra,* the Washtenaw County prosecutor, for the first time, charged Nuss with first-degree murder in the Withrow matter and reactivated the first-degree murder charge in the Brown matter. The two cases were consolidated for preliminary examination in the Fourteenth District Court.

At his preliminary examination defendant moved to quash the complaints and the warrants, alleging violation of his state and Federal constitutional rights to a speedy trial and against double jeopardy and pleading the statutory bar to prosecution contained in § 8 of the Criminal Sexual Psychopath Act. The motions were denied and Nuss was bound over to the Washtenaw Circuit Court to stand trial. Identical motions were brought in the circuit court and similarly denied.

On October 6, 1975, the circuit court certified the questions at issue in these motions for interlocutory appeal to the Michigan Court of Appeals.

A divided panel of the Court of Appeals reversed the trial court's determination. *People v Nuss,* 75 Mich App 346; 254 NW2d 883 (1977).

Judge MAHER, writing for the majority, reasoned that the statutory bar contained in § 8 of the repealed Criminal Sexual Psychopath Act prohibited prosecution of defendant for the Brown murder, and that his due process right not to be prejudiced by an unexcusable delay between the date of the offense and the date of the trial precluded his prosecution for the Withrow murder.

We granted the prosecutor's application for leave to appeal. 400 Mich 824 (1977).

We affirm the Court of Appeals with respect to both of these conclusions.

## I. THE BROWN MATTER

Our analysis begins with the uncontroverted fact that the circuit court made a final and binding determination that Nuss was a criminal sexual psychopathic person and committed him to the Department of Mental Health pursuant to the Criminal Sexual Psychopath Act. The principal motivating event underlying the defendant's criminal sexual psychopath petition and the court's order of commitment was the murder of Tom Brown, an offense with which the defendant stood charged at the time the petition was filed. The language of § 8 of the now repealed Criminal Sexual Psychopath Act provides that a "person who is found * * * to be a criminal sexual psychopathic person and such finding having become final" may not thereafter be tried for an offense with which he originally stood charged in the committing court at the time the petition requesting a criminal sexual psychopath hearing was

filed. Accordingly, the state is statutorily barred from prosecuting defendant for the Brown murder unless a showing can be made that the § 8 bar to prosecution is somehow now inoperative.

We conclude that neither the repeal of the Criminal Sexual Psychopath Act in 1968 nor the Wayne Circuit Court decision addressing the constitutionality of the detention of John Doe[6] affected the final adjudication of defendant Nuss' psychopathy or the concomitant bar to prosecution.

The principle is elemental that all statutes are prospective in their application unless the contrary clearly appears from the context of the statute itself.[7] *Wylie v City Commission of Grand Rapids,* 293 Mich 571, 585; 292 NW 668 (1940); *Detroit Trust Co v Detroit,* 269 Mich 81, 84; 256 NW 811 (1934). There is nothing in the language of the repealing statute, 1968 PA 143, to justify a construction of retrospective application.

The prosecutor's argument that the Wayne Circuit Court's judgment in the unreported case of *Doe v Dep't of Mental Health, supra,* that the Criminal Sexual Psychopath Act is unconstitutional in its confinement and release provisions is binding in the case before us is without merit. That decision may have been binding upon the parties to it and arguably all other criminal sexual psychopath persons then being detained in Wayne County, but defendant Nuss was neither. He did not consent to the jurisdiction of the Wayne Circuit Court and was not a party to those proceed-

[6] See footnote 1.

[7] In addition to the clear expression of a legislative intent that a statute should operate retrospectively, principles of due process mandate that such retrospective statutory schemes not impair vested rights. *Wylie v City Commission of Grand Rapids,* 293 Mich 571; 292 NW 668 (1940); *Detroit Trust Co v Detroit,* 269 Mich 81; 256 NW 811 (1934).

ings, being confined at the time in the Ionia State Hospital.

This Court has previously entertained and rejected a challenge to the constitutionality of the Criminal Sexual Psychopath Act in *People v Chapman,* 301 Mich 584; 4 NW2d 18 (1942).

We note further that Nuss was not released from his commitment following the Wayne County proceedings in the *Doe* case but was continued in confinement until, in due course and in compliance with the release provisions of the Criminal Sexual Psychopath Act, the hospital superintendent determined Nuss had so far recovered from his psychopathy that he could be paroled.[8]

The statutory bar of § 8 which was operative at the time of Nuss' commitment precludes subsequent criminal proceedings against a person finally found to be a criminal sexual psychopath for those offenses with which he stood charged or convicted at the time the petition requesting the criminal sexual psychopath determination was filed. Because the defendant was charged with the

---

[8] "Any person committed by a criminal court as a criminal sexual psychopath under the provisions of Act No. 165 of the Public Acts of 1939, being sections 780.501 to 780.509 of the Compiled Laws of 1948, and confined in a state institution under the jurisdiction of the state department of mental health, may be placed on parole by the hospital superintendent with the approval of the department. No such person shall be paroled unless there are reasonable grounds to believe that the person has recovered from such psychopathy and is not a menace to the safety of himself and others. Such person may be discharged by the hospital superintendent in accordance with this act, provided that no discharge shall be entered until such criminal sexual psychopathic person has been on parole in the open community for a continuous period of at least 2 years without recurrence of the criminal sexual psychopathic behavior which led to his original commitment. Prior to any such parole, release or discharge, the superintendent of the institution to which such person is committed or held, must first give written notice by certified mail to the prosecuting attorney and chief of police of the county from where such person was committed, and the prosecuting attorney and chief of police of the county to which such person will be released." MCL 330.35b; MSA 14.825(2).

murder of Tom Brown at the time his petition requesting the criminal sexual psychopath determination was filed, the state is barred from trying him for the Brown murder.

## II. THE WITHROW MATTER

With respect to the first-degree murder charge in the Withrow murder, we are faced with a somewhat different situation. Initially, the defendant was charged with the Withrow murder in Federal court. After an investigation disclosed a lack of Federal jurisdiction, the charge was dropped. Three days prior to the date on which the Federal charge was dismissed, defendant filed his petition in the state court requesting a criminal sexual psychopath determination in connection with the Brown murder. Although a murder charge in the Withrow matter was pending at the time the criminal sexual psychopath petition was filed, the charge had been brought in the Federal court rather than in the state circuit court. Consequently, later criminal prosecution of the defendant for the Withrow murder was not barred by § 8 of the Criminal Sexual Psychopath Act which provides: "No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced *upon the offense with which he originally stood charged, or convicted, in the committing court* at the time of the filing of the original petition." (Emphasis supplied.)

Although § 8 of the repealed Criminal Sexual Psychopath Act does not bar the prosecution of the defendant for the Withrow murder, principles of due process[9] may require dismissal of the charge

[9] US Const, Am XIV; Const 1963, art 1, § 17.

against him if there is evidence that an unjustified delay between the commission of the offense and the filing of the information substantially prejudiced his right to a fair trial. *United States v Marion,* 404 US 307, 324-326; 92 S Ct 455; 30 L Ed 2d 468 (1971); *United States v Feinberg,* 383 F2d 60 (CA 2, 1967); *Woody v United States,* 125 US App DC 192; 370 F2d 214 (1966); *Ross v United States,* 121 US App DC 233; 349 F2d 210 (1965).

In 1967, before the final criminal sexual psychopath determination was made in his case, the defendant, apparently recognizing the inapplicability of the § 8 bar to prosecution in the Withrow matter, filed a pleading in the Washtenaw Circuit Court notifying the court that the Federal charge had been dropped in the Withrow case and demanding a speedy trial in both the Withrow and the Brown cases. Despite this request and the fact that the Washtenaw County prosecutor already had possession of defendant's confession in the Withrow murder, the prosecutor did not charge defendant with Withrow's murder until January 17, 1975, almost eight years later, more than a year and a half after his parole from confinement as a criminal sexual psychopath. Apparently the prosecutor reasoned that as long as the defendant was detained pursuant to a commitment as a criminal sexual psychopath, there was no practical benefit to the prosecution to pursue the Withrow matter. Aside from this practical consideration the prosecutor suggests no justification for his failure to file charges against Nuss, especially in view of Nuss' demand to be speedily tried for the Withrow killing. As discussed above, § 8 of the Criminal Sexual Psychopath Act did not bar the institution of criminal proceedings nor is there any allegation on the part of the prosecutor that there was

insufficient evidence upon which to proceed. In fact, given the strength of the case which derives from the defendant's detailed confession, the prosecutor had little to lose from the delay. In view of the foregoing, we are persuaded that the lengthy delay between the offense and the filing of the information was unjustifiable.

Against this backdrop of unjustifiable delay we review the record for a showing of prejudice to defendant by reason thereof. *United States v Marion, supra,* at 325; *United States v Feinberg, supra,* at 65.

The witnesses who testified at the preliminary examination concerning defendant's confession admitted that they could not recall many of the circumstances surrounding the defendant's statement, including the number of police officers who were present. In addition, Dr. Alexander Dukay, one of the psychiatrists who examined defendant and testified at defendant's criminal sexual psychopath hearing, is now deceased. While the prosecutor argues that Dr. Dukay's transcribed testimony would be admissible at a subsequent murder trial under MRE 804(b)(1) as former testimony, it is not at all clear that he is correct.[10]

---

[10] Section 4 of the Criminal Sexual Psychopath Act, as it read in Compiled Laws of 1948, provides:

"Sec. 4. Upon the filing of such statement by the prosecuting attorney or the attorney general the court shall, or if filed on behalf of the accused the court may, appoint 2 qualified psychiatrists to make a personal examination of such alleged criminal sexual psychopathic person who shall file with the court a report in writing of the results of their examination together with their conclusions. *Said report shall be open to the inspection of the counsel for the accused, but shall not be competent evidence in any other proceeding against accused except the hearing to inquire into his alleged psychopathy.* Said alleged psychopath shall be required to answer the questions propounded by such psychiatrists under penalty of contempt of court. In the event that both of such psychiatrists in such report state their conclusions to the effect that such person is a criminal sexual psychopathic person, then proceedings shall be had as provided in this act prior to a trial of such person upon the criminal offense with which

Even if it be assumed that Dr. Dukay's testimony is now admissible, its probative value is minimal. Dr. Dukay testified at the Criminal Sexual Psychopath Act hearing that Nuss was reacting to an irresistible impulse, a form of insanity. But there was absolutely no development of that point and no defense motive to develop it since a finding of insanity would have precluded a determination that Nuss was a criminal sexual psychopath under the act. Consequently, the witness was not examined fully upon a matter which would now be absolutely crucial to a successful defense.

The purpose for which Dr. Dukay's expertise was sought and his testimony received in 1967 was wholly different than would be the case today. Moreover, as experienced trial attorneys are so well aware, the probative force of the testimony of an expert being examined and cross-examined before the jury is immeasurably greater than that which is generated by the reading of an eight-year-old transcript of his testimony dealing with a distinctly different aspect of the defendant's mental state. For all practical purposes, Dr. Dukay's death has deprived the defendant of probably favorable testimony crucial to his defense.

There can be little question that any expert opinion testimony concerning the defendant's 1967 mental state which is obtained and presented in 1979 is of severely diminished value. As Judge Bazelon observed in *Williams v United States,* 102 US App DC 51; 250 F2d 19, 23 (1957):

"Passage of time makes proof of any fact more diffi-

he then stands charged, or prior to sentence if he then stands convicted and has not been placed on probation, or prior to completion of probation sentence." (Emphasis added.)

It is doubtful whether repeal of the Criminal Sexual Psychopath Act would affect the legislative prohibition concerning the admissibility of such evidence. However, we do not decide the question.

cult. When the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced." See, also, *Dickey v Florida,* 398 US 30, 40; 90 S Ct 1564; 26 L Ed 2d 26 (1970) (Brennan, J., concurring).

When the "passage of time" is eight years, during which the subject has undergone six years of treatment and has been pronounced recovered, the difficulty of proof of the earlier mental state is still greater.

Finally, and most importantly, if the defendant had been charged with the murder of Withrow within a reasonable time after the commission of the offense, he would in all likelihood have successfully invoked the provisions of the now repealed Criminal Sexual Psychopath Act and future criminal proceedings on the Withrow charge would have been barred by § 8 of the repealed act.

Record evidence suggests that the circumstances surrounding both murders were extremely similar and Nuss had already been found to be a criminal sexual psychopath in connection with the Brown murder.

As the situation now stands, defendant is denied statutory protections which otherwise would have been available to him. In so doing we conclude that the defendant was substantially prejudiced by the eight-year delay. This prejudice to defendant was the direct consequence of the prosecutor's failure to reasonably charge defendant with the Withrow murder.

We hold that the substantial prejudice resulting from the unjustifiable delay in commencing criminal proceedings against the defendant precludes a trial on the Withrow matter.

The Court of Appeals is affirmed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS,

LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.