CHERON, INC v DON JONES, INC

Docket No. 216707. Submitted June 7, 2000, at Lansing. Decided December 26, 2000, at 10:05 A.M.

Cheron, Inc., on October 5, 1995, brought an action in the Cheboygan Circuit Court against Don Jones, Inc., and others, alleging intentional misrepresentation, innocent misrepresentation, and fraud in connection with the defendants' facilitation of the plaintiff's purchase of a motel from Midwest Innkeepers, which earlier agreed to pay the plaintiff $175,000 in settlement of a similar action brought against it by the plaintiff. The court, Scott L. Pavlich, J., after a bench trial, found in favor of the plaintiff with regard to its claim of innocent misrepresentation and determined damages at $57,000. However, the court reduced the damages award to zero after subtracting the $175,000 settlement from $57,000 pursuant to MCL 600.2925d(b); MSA 27A.2925(4)(b), which provided that when a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury, it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of consideration paid for it, whichever is the greater. The court also granted attorney fees and costs to the defendants as sanctions for the plaintiff's rejection of a mediation evaluation of $20,000. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court did not err in applying MCL 600.2925d(b); MSA 27A.2925(4)(b) to the plaintiff's October 5, 1995, action. The act that amended MCL 600.2925d; MSA 27A.2925(4) to eliminate subsection b, 1995 PA 161, was not approved and filed until September 29, 1995, was not ordered to take immediate effect, and thus took effect on March 28, 1996, the general effective date for 1995 legislation, notwithstanding 1995 PA 161, § 4, which provided that Act 161 "shall take effect September 1, 1995." Statutes are to be applied prospectively unless the Legislature's intent for retroactive application is clear. Here, there existed no clear intent for retroactive application. If the Legislature had intended a retroactive application to September 1, 1995, it would have provided that the amendment applied "to cases filed on or after September 1, 1995," instead

of stating that the amendment applied "to cases filed on or after the effective date of this amendatory act." While the Legislature did state in § 4 of Act 161 that "[t]his amendatory act shall take effect September 1, 1995," this was merely an indication that if the act were approved and filed before that date, it would not become law until September 1, 1995.

2. The trial court erred in granting the defendants' motion for attorney fees and costs as mediation sanctions under MCR 2.403(O). In determining whether the "verdict," or judgment of the court after a nonjury trial, was more favorable to the plaintiff than the mediation evaluation, the trial court erred in reducing its $57,000 damages award to the plaintiff to zero by subtracting the $175,000 settlement from the $57,000 award. A "verdict" may be adjusted only as provided under MCR 2.403(O)(3), which does not allow the setoff that occurred in this case.

Affirmed in part and reversed in part.

GRIFFIN, J., concurring in part and dissenting in part, stated that the trial court's award of mediation sanctions in favor of the defendants should be affirmed. The trial court's original damages award of $57,000 is not contained in a judgment, but in an opinion and order that recites the trial court's findings of fact and conclusions of law. The only judgment entered by the lower court was a judgment that specifies that the plaintiff shall not be entitled to recover any monies from the defendants. The $20,000 mediation evaluation rejected by the plaintiff was more than ten percent greater than the judgment entered in this case, thus entitling the defendants to mediation sanctions.

1. STATUTES — PROSPECTIVE APPLICATION.

Statutes apply prospectively unless the Legislature's intent for retroactive application is clear.

2. COSTS — ATTORNEY FEES — MEDIATION SANCTIONS — ADJUSTMENTS OF VERDICTS.

A verdict, for purposes of determining whether it is not more favorable to a party who rejected a mediation evaluation so as to render that party liable for the opposing party's costs and attorney fees as mediation sanctions, may be adjusted only as provided under MCR 2.403(O)(3).

*Mark A. Hullman,* for the plaintiff.

*Keleher & Brunner* (by *Thomas N. Brunner*), for the defendants.

Before: METER, P.J., and GRIFFIN and TALBOT, JJ.

METER, P.J. Plaintiff appeals as of right from an order reducing its damages award against defendants by an amount that plaintiff received pursuant to a settlement agreement in a prior action. Plaintiff also appeals an order granting mediation sanctions to defendants under MCR 2.403(O). We affirm in part and reverse in part.

This case arises out of plaintiff's purchase of a motel from Midwest Innkeepers (Midwest). Defendants facilitated plaintiff's purchase of the motel from Midwest. After the purchase, plaintiff discovered that the motel was unable to generate sufficient income and sued Midwest, alleging misrepresentation and fraud. Subsequently, plaintiff and Midwest settled the suit; Midwest agreed to pay plaintiff $175,000 and to rescind the contract to purchase the motel, and plaintiff signed a covenant not to sue.

Several months later, plaintiff sued defendants, alleging intentional misrepresentation, innocent misrepresentation, and fraud. Plaintiff claims on appeal that its total damages were $532,779 but that it only sought $357,779 in the suit against defendants because it subtracted the $175,000 received under the settlement agreement with Midwest.

Following a bench trial, the trial court found for plaintiff on its innocent misrepresentation claim against defendants and awarded $57,000 in damages. Subsequently, the trial court subtracted the $175,000 settlement amount from this damages award under MCL 600.2925d; MSA 27A.2925(4), thereby reducing the damages award to zero. It is from this action that plaintiff appeals.

Before March 28, 1996, MCL 600.2925d; MSA 27A.2925(4) stated as follows:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.
>
> (b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.
>
> (c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

On March 28, 1996, an amendment of the statute took effect; this amendment eliminated the language in subsection b. 1995 PA 161, the act amending the statute, stated that the amendment of § 2925d applied "to cases filed on or after the effective date of this amendatory act." 1995 PA 161, § 3. 1995 PA 161 further stated that "[t]his amendatory act shall take effect September 1, 1995." 1995 PA 161, § 4. However, 1995 PA 161 was not approved and filed until September 29, 1995, and was not ordered to take immediate effect. Accordingly, it took effect on the general effective date for 1995 legislation: March 28, 1996. See Const 1963, art 4, § 27.

Plaintiff contends that the September 1, 1995, effective date stated in 1995 PA 161 should govern the statutory amendment and that the amendment should therefore apply to the instant case because plaintiff filed suit against defendants on October 5, 1995. We disagree. This issue involves statutory interpretation,

which is subject to review de novo. *Shields v Shell Oil Co*, 237 Mich App 682, 688; 604 NW2d 719 (1999).

In *Selk v Detroit Plastic Products (On Resubmission)*, 419 Mich 32, 35, n 2; 348 NW2d 652 (1984), the Supreme Court indicated that when a public act states that the act shall apply to all actions pending or commenced on or after the effective date of the act and then provides a specific effective date for the act, the Legislature has evidenced an intent for the act to apply retroactively to the specified effective date, even if the actual approval and filing of the act occurs after the specified effective date. *Selk*, therefore, would seem to support plaintiff's position in the instant case. However, this language from a footnote in *Selk* was mere obiter dicta[1] and therefore does not constitute binding authority under the doctrine of stare decisis. See *People v Squires*, 240 Mich App 454, 458; 613 NW2d 361 (2000). With this in mind, we cannot construe the Legislature's statement in 1995 PA 161, § 3 that the amendment applied "to cases filed on or after the effective date of this amendatory act" to allow for retroactivity to September 1, 1995, given that the amendment did not actually take effect until March 28, 1996. Indeed, statutes are to be applied prospectively[2] unless the Legislature's intent for retroactive application is clear. See *People v Nuss*, 405

---

[1] Indeed, the *Selk* majority indicated that its analysis and conclusion did not involve a question of retroactivity. See *Selk, supra* at 34, in which the Court reaffirmed the rationale of its earlier opinion, *Selk v Detroit Plastic Products*, 419 Mich 1, 8; 345 NW2d 184 (1984).

[2] While there is an exception for remedial statutes, see *Michigan Basic Property Ins Ass'n v Ware*, 230 Mich App 44, 53; 583 NW2d 240 (1998), the statutory amendment at issue here was not remedial. Indeed, the amendment did not further existing rights but instead created new rights for plaintiffs and destroyed existing rights for defendants. See *id.*

Mich 437, 450; 276 NW2d 448 (1979), and *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 614; 255 NW2d 702 (1977). There simply existed no clear intent for a retroactive application in the instant case. If the Legislature had intended a retroactive application to September 1, 1995, it would have provided that the amendment applied "to cases filed on or after September 1, 1995," instead of stating that the amendment applied "to cases filed on or after the effective date of this amendatory act." While the Legislature did state in § 4 that "[t]his amendatory act shall take effect September 1, 1995," we conclude that this was merely an indication that if the act were approved and filed before that date, it would not become law until September 1, 1995. See *Selk, supra* at 35, n 2 (indicating that "effective dates provide notice to those who must conform their conduct to the law as specified in the enactment"); see also *Nuss, supra* at 450, and *Int'l Business Machines, supra* at 614 (indicating that statutes are presumed to operate prospectively). Thus, the trial court did not err in applying the preamendment version of MCL 600.2925d; MSA 27A.2925(4) to this case.

Next, plaintiff argues that the preamendment version of § 2925d required only that the *claim* for damages, not the actual damages award, against a nonsettling tortfeasor be reduced by the settlement amount reached with a settling tortfeasor. Plaintiff argues that because it reduced its original $532,779 claim for damages against defendants to $357,779 by subtracting the $175,000 received from Midwest, it complied with the express requirements of § 2925d. This issue again involves statutory construction and is subject to review de novo. *Shields, supra* at 688. We con-

clude that the trial court correctly determined that under § 2925d, the $57,000 judgment against defendants had to be reduced by the $175,000 that plaintiff received from Midwest in the first action. Contrary to plaintiff's argument, § 2925d required that the *actual damages award*—not the amount of the claim as determined by plaintiff—be reduced by the settlement amount reached with the other tortfeasor. See, e.g., *Dep't of Transportation v Thrasher*, 446 Mich 61, 79; 521 NW2d 214 (1994), *Rittenhouse v Erhart*, 424 Mich 166, 185, 193; 380 NW2d 440 (1985), and *Mayhew v Berrien Co Rd Comm*, 414 Mich 399, 407; 326 NW2d 366 (1982). No error occurred.[3]

Finally, plaintiff argues that the trial court erred in granting defendants' motion for attorney fees and costs as mediation sanctions under MCR 2.403(O) because the original $57,000 damages award was more than the mediation evaluation of $20,000. We agree. We review de novo a trial court's decision to grant or deny a motion for mediation sanctions. *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129; 573 NW2d 61 (1997).

MCR 2.403(O) states:

> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation. However,

---

[3] Plaintiff additionally suggests that the trial court erred in failing to ascertain the amount of money Midwest paid in exchange for the covenant not to sue. Plaintiff failed to preserve this issue by failing to raise it in the statement of questions presented. *Phinney v Perlmutter*, 222 Mich App 513, 564; 564 NW2d 532 (1997). Moreover, we note that plaintiff essentially concedes that the amount at issue was $175,000, since plaintiff contends that it appropriately reduced its claim against defendants by $175,000.

if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the mediation evaluation.

(2) For purposes of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the mediation evaluation.

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the mediation evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306; MSA 27A.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

This Court recently held that "the plain language of MCR 2.403(O) requires the trial court to award mediation sanctions if the jury verdict itself, adjusted only as set forth in MCR 2.403(O)(3), is not more favorable to the rejecting party than the mediation evaluation." *Marketos v American Employers Ins Co*, 240 Mich App 684, 700; 612 NW2d 848 (2000). In other words, a trial court should not subtract a posttrial setoff amount from the verdict before determining whether mediations sanctions are warranted. *Id.* at 700-701. *Marketos* indicated that MCR 2.403(O) was not intended to "allow for mediation sanctions based on the amount of a judgment that has been adjusted by posttrial motions." *Id.* at 700, n 8.

Here, the trial court initially awarded damages in the amount of $57,000 but, in determining whether media-

tion sanctions were appropriate, it subtracted the
$175,000 settlement amount and used the adjusted
judgment of zero. Under Marketos, the trial court
should not have subtracted the settlement amount
from the judgment before determining whether medi-
ation sanctions were warranted. Id. at 700-701. We
acknowledge that Marketos involved a jury verdict,
whereas the instant case involved a judgment follow-
ing a bench trial.[4] However, we can discern no reason
why the jury verdict in Marketos should be treated
differently from a trial court's judgment following a
bench trial. Moreover, Marketos specifically indicated
that MCR 2.403(O) was not intended to "allow for
mediation sanctions based on the amount of a judg-
ment that has been adjusted by posttrial motions." Id.
at 700, n 8. Accordingly, the trial court should have
used the $57,000 figure for purposes of determining
mediation sanctions in this case. Because the $57,000
damages award was more favorable to plaintiff than

---

[4] We note that the $57,000 damages award was contained in a docu-
ment entitled an "opinion and order." The "opinion and order" stated as
follows: "Judgment should be entered for [p]laintiff against [d]efendant
. . . in the amount of $57,000. It is so ordered." While the document was
not entitled a "judgment," it functioned, for all intents and purposes, as a
judgment. Indeed, "judgment" is defined as "[a] court's final determination
of the rights and obligations of the parties in a case." See Black's Law Dic-
tionary (7th ed), p 846. There is no requirement that this determination be
contained in a document entitled a "judgment." Such a requirement would
elevate form over substance. Here, the trial court did indeed intend the
original "opinion and order" to function as the "final determination of the
rights and obligations of the parties." The second order entered by the
trial court, which allowed for zero damages after the $175,000 setoff, was
essentially an amended judgment. Nonetheless, under the reasoning of
Marketos, supra at 700-701, the operative order for purposes of assessing
mediation sanctions was the original order awarding $57,000 in damages.
This was the original "judgment by the court after a nonjury trial" as con-
templated by MCR 2.403(O)(2)(b).

the mediation evaluation of $20,000, defendants were not entitled to mediation sanctions.

Defendants contend that mediation sanctions *were* in fact appropriate in this case because the trial court's finding that defendants had committed intentional misrepresentation was erroneous. In other words, defendants contend that the appropriate, initial judgment in this case was zero and not $57,000. Defendants believe that they were not obligated to file a cross appeal to argue this issue because they are merely urging an alternative ground for affirmance of the trial court's decision with regard to mediation sanctions. See *In re Herbach Estate*, 230 Mich App 276, 283-284; 583 NW2d 541 (1998). *Herbach* states as follows:

> Although a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court. [*Id.* at 284.]

Here, defendants are essentially seeking to obtain "a decision more favorable than that rendered by the lower tribunal," i.e., an initial judgment of zero instead of an initial judgment of $57,000. Accordingly, we conclude that they were obligated to file a cross appeal in order to properly argue this issue. *Id.*

Affirmed in part and reversed in part. We do not retain jurisdiction.

TALBOT, J., concurred.

GRIFFIN, J. (*concurring in part and dissenting in part*). I respectfully dissent from the reversal of the mediation sanctions awarded in favor of defendants.

The majority concludes that "under MCR 2.403(O) because the original $57,000 damages award was more than the mediation evaluation of $20,000," *ante* at 218, defendants are not entitled to mediation sanctions. The award to which the majority refers is contained in a December 9, 1997, "opinion and order" that recites the trial court's findings of fact and conclusions of law rendered following this nonjury trial. The majority treats this opinion and order as a judgment; I do not. The disputed opinion and order ends with the following phrases:

Judgment *should* be entered for plaintiff against defendant, Don Jones, Inc. in the amount of $57,000.

IT IS SO ORDERED. [Emphasis added.]

In my view, the trial court's opinion and order merely set forth its findings of fact, conclusions of law, and award. The parties were advised that a judgment *should* be entered consistent with the court's order and opinion. "Should" is the past tense of "shall." *Random House Webster's College Dictionary* (1997), p 1196. "[T]he main function of should in modern American English is to express duty, necessity . . . ," *id.* at 1197. Further, "[r]ules similar to those for choosing between *shall* and *will* have long been advanced for *should* and *would*," *id.* at 1196-1197, and "[t]he traditional rule of usage says that *future time* is indicated by *shall* in the first person." *Id.* at 1187 (emphasis added).

The trial court's direction to the parties complies with the requirements of MCR 2.517(A)(1):

In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state

separately its conclusions of law, and *direct entry* of the appropriate judgment. [Emphasis added.]

As stated in 2 Lang, Neilson, Young & Holsinger, Michigan Civil Procedure, Judgments, § 20.2, pp 20-5—20-6:

> A judgment rendered by the court granting the relief requested does not take effect until a written judgment is signed by the court. MCR 2.602(A). (See [State court Administrative Office] SCAO form MC 10 for a sample judgment in a civil case.) For example, when a verdict is given at the end of a trial, judgment is rendered for at least one of the parties. However, that verdict does not become the final judgment of the court until a written judgment is submitted to the court and signed by the judge. Generally, the date the judgment is signed is the date of entry. See § 20.8 for a discussion of *nunc pro tunc* entries (those made at a later time to correct the record, with retroactive effect). Time limits for filing postjudgment matters begin to run from the date of entry of the judgment.

MCR 2.602(B) provides four different methods for the entry of a judgment. *Lang, supra* at § 20.3, p 20-6. Although one of the methods is the entry by the court "at the time it grants the relief provided by the judgment or order," MCR 2.602(B)(1), such an event customarily occurs in the presence of counsel in open court following a hearing. The act of signing the judgment in open court affords the parties an opportunity to raise objections to the form of the judgment. Because the opinion and order at issue was entered without an opportunity for objection, its entry would be extraordinary were it deemed to be a judgment.

In 3 Dean & Longhofer, Michigan Court Rules Practice (4th ed), § 2602.2, pp 295-296, the commentators emphasize that a judgment is the document that

finally disposes of a claim. It is materially different from the trial court's findings of fact and conclusions of law:

> A judgment is the act of a court finally disposing of a claim or judicial proceeding, although the clerk may perform related ministerial acts under the direction of the court. The verdict in a jury trial, and the court's findings of fact and conclusions of law in a non-jury trial, are the bases on which the judgment of the court rests, not the judgment itself. Similarly, a distinction exists between the court's decision or opinion and the judgment entered thereon. An opinion announces the court's decision and its reasons therefor, but the further entry of a judgment is required to carry the decision into legal effect. [*Id.*]

Decisions of this Court and the Supreme Court have held that findings of fact made by a trial court are essentially a verdict and not a judgment. In this regard, we stated in *Triple E Produce Corp v Mastronardi Produce Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995), "[a] finding of fact made by a trial court sitting without a jury is essentially a verdict, which may include an award of damages." Further, the Supreme Court in *Donohue v Wayne Circuit Judge*, 238 Mich 253, 256; 213 NW 150 (1927), stated:

> A finding of fact made by a circuit court when sitting without a jury is essentially a verdict. A verdict may find damages but as a general rule it does not determine costs. An award of costs is an incident of judgment rather than of findings and conclusions. Costs in nearly all cases follow judgment as a legal incident (33 C. J. p 1175, note 84), and need not be mentioned in the findings.

The order and opinion at issue is silent regarding the usual judgment considerations of costs, interest, and attorney fees. Its incompleteness regarding these

matters is further evidence that it is not a final disposition of the claim. In addition, its form differs substantially and materially from standard SCAO judgment form MC 10. In light of these distinctions, I conclude that any efforts to collect upon this order by garnishment or attachment would be problematic at best.

Following the entry of the December 9, 1997, opinion and order, and in response to defendants' "motion for new trial and/or amendment of judgment," the trial court on February 17, 1998, rendered a supplemental *opinion*, the last line of which states "[d]efendant, Don Jones, Inc., *may present a judgment* complying herewith." (Emphasis added.) Because the trial court directed the presentation of a judgment rather than an amendment of a judgment, I believe the trial court intended its earlier opinion and order to be its findings of facts and conclusions of law, not its judgment.

The only document entitled "judgment" entered by the lower court was a November 16, 1998, *judgment* that specifies that plaintiff shall not be entitled to recover any monies from the defendants, Don Jones, Inc., and Duane Jones. In my view, the November 16, 1998, judgment is the only judgment in this case. Accordingly, I would hold that defendants are entitled to mediation sanctions. Because MCR 2.403(O)(2)(b) defines verdict as "a judgment by the court after a nonjury trial" and the mediation evaluation of $20,000 rejected by plaintiff was more than ten percent greater than the judgment in favor of defendants, the circuit court properly awarded defendants mediation sanctions. *Marketos v American Employers Ins Co*, 240 Mich App 684; 612 NW2d 848 (2000), is not applicable or controlling because it involved a jury verdict,

MCR 2.403(O)(2)(a), and not a judgment by the court after a nonjury trial, MCR 2.403(O)(2)(b). For these reasons, I respectfully dissent from the reversal of the trial court's award of mediation sanctions in favor of defendants.

Finally, because the December 7, 1997, opinion and order was not a judgment and defendants are entitled to mediation sanctions based on the November 16, 1998, judgment, I find it unnecessary to rule on defendants' alternative ground for affirmance. Although it comes to the wrong result, the majority's opinion recognizes the correct legal principle that a cross appeal is not necessary to urge an alternative ground for affirmance. *Cox v Flint Bd of Hosp Managers*, 462 Mich 859 (2000), *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994), and *In re Herbach Estate*, 230 Mich App 276, 283-284; 583 NW2d 541 (1998). In all other respects, I join the majority's opinion.