# STATE OF MICHIGAN

# COURT OF APPEALS

TAHMOURES SHEKOOHFAR and
SIYAVOOSH SHEKOOHFAR, a/k/a
SIYAVOOSH SHEKOOFHAR,

        Plaintiffs/Counter-Defendants-
        Appellees,

v

VIRGINIA LA ROSA, individually and as
Personal Representative of the Estate of JOSEPH
VIVONA,

        Defendants/Counter-Plaintiffs-
        Appellants.

UNPUBLISHED
January 27, 2015

No. 316702
Wayne Circuit Court
LC No. 09-028480-CZ

TAHMOURES SHEKOOHFAR and
SIYAVOOSH SHEKOOHFAR, a/k/a
SIYAVOOSH SHEKOOFHAR,

        Plaintiffs/Counter-Defendants-
        Appellants,

v

VIRGINIA LA ROSA, individually and as
Personal Representative of the Estate of JOSEPH
VIVONA,

        Defendants/Counter-Plaintiffs-
        Appellees.

No. 319118
Wayne Circuit Court
LC No. 09-028480-CZ

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 316702, defendants/counter-plaintiffs Virginia La Rosa, in her individual capacity and as personal representative of the estate of Joseph Vivona (hereinafter collectively

-1-

referred to as "defendants"), appeal as of right the trial court's May 23, 2013 order denying their request for prejudgment interest pursuant to MCL 600.6013(7) on a $215,378.24 jury verdict entered against plaintiffs/counter-defendants, Tahmoures Shekoohfar and Siyavoosh Shekoohfar (hereinafter "plaintiffs"). In Docket No. 319118, plaintiffs appeal as of right the trial court's September 30, 2013 order granting case evaluation sanctions to defendants. These appeals were consolidated pursuant to this Court's November 27, 2013 order. *Shekoohfar v La Rosa*, unpublished order of the Court of Appeals, entered November 27, 2013 (Docket Nos. 316702; 319118). We affirm in both cases.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

These consolidated appeals arise from a dispute involving the purchase of certain real property on land contract. Plaintiffs agreed to purchase on land contract commercial property located at 18510 Moross Road in Detroit from Joseph Vivona, Steve Vivona, Lean Vivona, and defendant Virginia La Rosa (formerly known as Virginia Vivona).[1] The terms of the land contract provided for a down payment, monthly payments with 9% interest, and a balloon payment after a term of years. The balloon payment was due in February 2004; however, plaintiffs did not make the payment and a closing did not take place at that time. Plaintiffs alleged that La Rosa made no effort to facilitate the completion of the purchase; La Rosa alleged that plaintiffs failed to make the payment on time despite her requests.

Plaintiffs continued to make monthly payments after the scheduled closing date passed. According to their complaint, they believed that those payments would be credited toward the remaining balance due on the land contract. In early 2006, plaintiffs obtained approval for a loan in order to satisfy the remaining balance on the land contract. The parties scheduled a closing date in April 2006, but closing did not occur. According to plaintiffs, La Rosa was not ready to close at that time, and the day before the scheduled closing date, La Rosa contacted the title company and cancelled the scheduled closing. Plaintiffs alleged that defendants did not have clear title to the property because the property was subject to an ongoing probate dispute involving the heirs of Joseph Vivona, one of the original sellers. Plaintiffs alleged that the disputes regarding title to the property caused La Rosa to cancel the scheduled closing. La Rosa alleged that plaintiffs were responsible for the failure to close, asserting that despite several requests for payment, plaintiffs failed to comply.

On November 18, 2009, plaintiffs initiated the instant proceedings by filing a complaint against defendants for breach of contract. On December 21, 2009, defendants filed a counter-complaint, alleging breach of contract against plaintiffs for their alleged failure to comply with the terms of the land contract.

After case evaluation and negotiations failed to yield a settlement, the matter proceeded to a jury trial on October 30, 2012. Following trial, the jury found that both plaintiffs and defendants breached the land contract. The jury determined that plaintiffs were not entitled to damages because defendants' breach was "not substantial." The jury determined that defendants

---

[1] La Rosa is the only surviving seller of the property.

were entitled to $215,378.24 in damages for plaintiffs' breach. The verdict form asked the jury to determine "the amount of damages incurred through today [November 14, 2012] . . . as a result of the [plaintiffs'] breach[.]" In the corresponding blank where the jury was to write in a damage award was a handwritten figure, $215,378.24, along with the note, "closing as of 4/2006."

Following the jury's verdict, defendants moved for entry of judgment, contending that in addition to the $215,378.24 award, they were entitled to interest on the judgment pursuant to MCL 600.6013(7). They argued that they were entitled to interest on the judgment that began to accrue from the date the case was filed—November 18, 2009—at the rate provided for in the land contract—9% per annum.

At a hearing held on April 5, 2013, defense counsel argued that, pursuant to MCL 600.6013(7), the trial court was required to award interest on the judgment from the date the instant proceedings began at the rate of 9% per annum, as this was the rate set forth in the parties' land contract. At a rate of 9%, defendants calculated the amount of interest owed at $76,315.63.

The trial court expressed concern over whether the jury's verdict accounted for such interest, noting that defendants asked the jury, both during their case-in-chief and closing argument, to award interest from the date of the breach of the contract until the date of the verdict. In addition, the verdict form indicates that the jury awarded damages for plaintiffs' breach of contract "through today," meaning November 14, 2012. Defense counsel explained that "[t]here was a closing that took place in 2006 and then we got the trial and my client asked for interest all the way up to 2006 and until the date of trial. The jury didn't award that." The trial court asked defense counsel how he knew the jury's award did not include interest, and counsel explained his reasoning:

> Well the verdict that the jury came back with, it's pretty clear that the numbers they awarded my client is [sic] the number that was always [sic] 2006, very specific number. $215,000 and some change. I had asked for late fees and interest of $400,000-plus. So the jury awarded some contractual interest up to 2006 and that award included interest but nothing beyond that. And I know the jury didn't receive any instruction about judgment interest because judgment interest is statutory; it shall be applied on our judgment.

Plaintiffs' counsel argued that the jury considered and rejected defendants' request for interest beyond April 2006. Plaintiffs' counsel noted that at trial they had presented testimony and a report from an expert witness who explained the amount of interest that defendants had requested in the case. Plaintiffs' counsel contended that to allow defendants to make a renewed request for that same interest would give defendants "a second bite at the apple" and would prejudice plaintiffs. Counsel argued that, had he known defendants were also going to request statutory prejudgment interest, plaintiffs would have addressed the interest issue differently with the jury and the jurors may have reduced their award even further so as to effectuate the award they deemed appropriate.

The trial court found that defendants, by asking the jury to consider and award interest on the contract from the date of the breach until the date it entered its verdict, the defendants had allowed the jury to determine whether enforcement of the nine percent interest clause in the contract was warranted under the circumstances presented, and that by seeking that same percentage rate from the trial court pursuant to MCL 600.6013(7), they were attempting to have a "second bite" at the apple. The court explained:

> Ms. La Rosa asked for the contract interest as part of [defendants'] damages in their closing argument. The jury heard that argument, came back with an award of x-number of dollars, which means that the verdict took into account the request for that interest and basically said, ["]no["] or reduced it down somewhat. So we are in a situation now where I think he is asking the court to second-guess the award of the jury and award interest where they chose not to.

> * * *

> . . . The jury has already considered the nine percent and they said, ["]no["] or at least reduced it down. The judgment reflects whatever they believe that was appropriate in terms of the nine percent.

The trial court concluded that awarding statutory pre-judgment interest at the rate set forth in the parties' contract was inappropriate, but that defendants were nonetheless entitled to *some* interest on the judgment award. In response, defense counsel conceded that if the jury had actually awarded his clients the nine percent interest rate, requesting statutory interest on top of that would be "double-dipping," and although he alleged it would be proper, he would not do so. Counsel acknowledged the judge's conclusion that some type of interest under the statute was appropriate, and said that "we just have to figure out what it is. The statute says it's the interest that's in the land contract but you are saying—," at which point the trial court interrupted and concluded:

> The jury has already considered and said ["]no["] or at least given you part of it. For all we know that $200-some-thousand dollars could have reflected the nine percent and they discounted the substance of the amount of damages by whatever and they have already given you the nine percent. How do we know they didn't give . [sic] You the nine percent?

> * * *

> Just to summarize. The judgment interest issue was resolved or considered by the jury at that nine percent rate that was requested. They came up with a number. Either they awarded part interest; something reduced; they considered it. The number that we have, we can't say for a fact what portion of that award was interest, what portion of it was the actual payments that were due and owing apart from the interest, we don't know. But, the jury considered it in light of the argument of the plaintiff [sic] to them requesting it. So we are not going to second-guess the jury's call as to their consideration of the nine percent,

-4-

which is basically what the plaintiff is asking that the court do. So we are not going to set that in addition to what they have already ruled on.

Thereafter, the trial court ruled that defendants would be entitled to "regular judgment interest" pursuant to MCL 600.6013(8). On May 23, 2013, the trial court entered an order stating that prejudgment interest would be calculated pursuant to MCL 600.6013(8) from November 18, 2009—the date plaintiffs' complaint was filed—until the date of the entry of the judgment. The trial court determined that the prejudgment interest to which defendants were entitled was $20,127.21 as of April 19, 2013, plus "$10.83 per day until this judgment is entered by the Court." Concerning post-judgment interest, the trial court ordered that the interest rate to which defendants were entitled was the 9% rate set forth in the land contract. It is from this order that defendants now appeal as of right in Docket No. 316702.

## II. DOCKET NO. 316702—INTEREST

Defendants argue that the trial court erred by awarding prejudgment interest pursuant to MCL 600.6013(8) rather than MCL 600.6013(7). "We review de novo the award of prejudgment interest pursuant to MCL 600.6013[.]" *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 623-624; 550 NW2d 580 (1996).

"MCL 600.6013 . . . entitles a prevailing party in a civil action to prejudgment interest from the date the complaint was filed to the entry of judgment." *Id.* at 624. See also MCL 600.6013(1) ("Interest is allowed on a money judgment recovered in a civil action, as provided in this section."). "The purpose of this statue is to compensate the prevailing party for loss of use of the funds awarded as a money judgment and to offset the costs of litigation." *Farmers Ins Exch v Titan Ins Co*, 251 Mich App 454, 460; 651 NW2d 428 (2002). "MCL 600.6013 is remedial in nature and thus should be liberally construed in favor of the prevailing party." *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245, 258; 660 NW2d 344 (2003).

Defendants contend that prejudgment interest should be awarded pursuant to MCL 600.6013(7), which provides:

> For a complaint filed on or after July 1, 2002, if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. The rate under this subsection shall not exceed 13% per year compounded annually.

As used in the statute, the term "written instrument" refers to formal written documents, such as contracts. See *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 621; 552 NW2d 657 (1996), aff'd 457 Mich 341 (1998).

The trial court rejected the application of MCL 600.6013(7), concluding that the jury had already considered the issue of prejudgment interest, at the rate specified in the instrument, from

-5-

the date of the filing of the complaint to the date of the judgment because defendants' counsel asked for such interest during his case-in-chief and during closing argument. After rejecting an award of prejudgment interest pursuant to MCL 600.6013(7), the trial court concluded that prejudgment interest should be awarded pursuant to MCL 600.6013(8), which provides, in pertinent part:

> Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs.

The issue in this case involves an analysis of judgment interest, which is statutory pursuant to MCL 600.6013, and interest as an element on damages. As explained by this Court in *Vannoy v City of Warren*, 26 Mich App 283, 288; 182 NW2d 65 (1970), aff'd 386 Mich 686 (1972), interest as an element of damages "is awarded by the jury as part of the general verdict. [Statutory interest] is computed on and added to the general verdict. Yet, both types of interest serve the same basic function: to compensate the plaintiff for the loss of the use of funds." Generally, the prejudgment interest statute should not be applied in a manner that would permit a double recovery. See *Holloway Constr Co v Oakland Co Bd of Co Rd Comm'rs*, 450 Mich 608, 618; 543 NW2d 923 (1996) (disallowing an award of statutory interest where it appeared that an arbitration panel already considered such interest). The purpose of prejudgment interest is only to make the injured party whole; it is not intended to provide a double recovery to the injured party. See *id; Vannoy*, 26 Mich App at 288.

We find that in this case, where defendants' trial counsel expressly asked the jury to calculate and award interest at the contractual 9% rate from the date of the breach through the date of the verdict as an element of damages, a portion of which would have included the same interest awardable under MCL 600.6013(7), the trial court correctly ruled that defendants were not entitled to statutory interest at the rate specified in the contract pursuant to MCL 600.6013(7). Defendants' entitlement to the 9% contractual interest rate was clearly before the jury. It is undisputed that defendants asked for interest on the contract through the date of the jury's verdict and presented the jury with an exhibit that calculated interest due on the balloon payment through the date of the jury's verdict. In addition, the verdict form asked the jury to award defendants damages "through today," meaning through the date of the jury's verdict on November 14, 2012. Therefore, it appears the jury considered and *rejected* the clause of the parties' contract that provided for 9% interest on overdue payments.[2] This was the same interest

---

[2] Or, rather than rejecting the interest clause, the jury may have reached a compromise verdict and awarded a lesser amount than what was requested by defendants, then added 9% interest to

rate that defendants sought to impose on the judgment pursuant to MCL 600.6013(7). Implicit in the jury's verdict was that it either rejected the clause of the land contract concerning 9% interest or that it granted an award and then added 9% interest on that amount. Where the jury already considered such interest, defendants should not be given the opportunity to take a second bite at the apple by asking the trial court for the very interest the jury already considered. See *Auto Club Ins Ass'n v Williams*, 179 Mich App 401, 408; 446 NW2d 321 (1989) (a party "is not entitled to a second bite at the apple."). See also *Holloway Constr Co*, 450 Mich at 618 (prohibiting a double recovery). Because defendant asked the jury to consider and incorporate in its verdict defendants' entitlement to interest at the 9% contractual rate, to award defendants statutory pre-judgment interest pursuant to MCL 600.6013(7) would risk running afoul of the prohibition against awarding double interest. See *id.* The purpose of MCL 600.6013(7) is to award the prevailing party interest for the loss of use of funds. *Farmers Ins Exch*, 251 Mich App at 460. Here, the jury was asked to award damages that would have accomplished this very purpose.

Moreover, defendants should not now be heard to protest this matter when, as noted above, they expressly requested the jury's determination of both the pre-complaint interest and the interest due from the date of filing of the complaint to the date of the verdict at the rate set forth in the contract. See *Moody v Homes Owners Inc Co*, 304 Mich App 415, 438; 849 NW2d 31 (2014), quoting *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003) ("Under the invited-error doctrine, appellate relief is generally not available because 'when a party invites the error, he waives his right to seek appellate review, and any error is extinguished.' ").

Plaintiffs contend that defendants are not entitled to *any* statutory prejudgment interest pursuant to either MCL 600.6013(7) or MCL 600.6013(8). As an alternative, they contend that, to the extent defendants are entitled to prejudgment interest, the amount to which they are entitled should be reduced by the amount of interest that accrued during periods of delay that were not caused by plaintiffs. Plaintiffs have not filed a cross-appeal. Where an appellee seeks "a decision more favorable than that rendered by the lower tribunal" the appellee is required to file a cross appeal in order for the issue to properly be before this Court. *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 221; 625 NW2d 93 (2000). "Generally, failure to file a cross appeal precludes an appellee from raising an issue not appealed by the appellant." *Kosmyna v Botsford Comm Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999). Here, plaintiffs seek a decision more favorable than that rendered by the trial court. As such, they were required to file a cross appeal, and their failure to do so means that we need not consider these issues. *Cheron, Inc*, 244 Mich App at 221; *Kosmyna*, 238 Mich App at 696.

### III. DOCKET NO. 319118—CASE EVALUATION SANCTIONS

In Docket No. 319118, plaintiffs appeal as of right from the trial court's September 30, 2013 order granting $35,539.98 in case evaluation sanctions to defendants.

---

that amount through the date of its verdict. We note that the jury found both plaintiffs and defendants had breached the contract.

Before this matter proceeded to trial, the parties participated in case evaluation. On December 20, 2010, a case evaluation panel issued an award of $100,000 for plaintiffs on their complaint against defendants. On the counterclaim, the case evaluation panel awarded $200,000 to defendants against plaintiffs. Defendants rejected the awards. Plaintiffs filed what they termed a "limited acceptance" to the award, subject to the following two conditions: (1) "Free and clear title to the subject property commonly known as 18150 Moross Road, Detroit, Michigan 48224 is conveyed to the Plaintiffs by all opposing parties"; and" (2) "All opposing parties accept the Case Evaluation Award in its entirety." The trial court found that plaintiffs' purported limited acceptance was not in conformity with the court rules; thus, the trial court deemed the limited acceptance a rejection of the case evaluation award. The trial court, finding that the jury's verdict, when combined with interest and costs, was more favorable to defendants by at least 10%, awarded sanctions to defendants.

The decision whether to award case-evaluation sanctions is a question of law that this Court reviews de novo. *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012). Within 28 days of the panel's evaluation, each party "shall file a written acceptance or rejection of the panel's evaluation . . . ." MCR 2.403(L)(1). A party who rejects the panel's evaluation is subject to sanctions if he or she fails to improve upon his or her position at trial. *Van Elslander*, 297 Mich App at 212. MCR 2.403(O)(1) provides that:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

In determining whether a verdict is "more favorable" for purposes of MCR 2.403(O)(1), a verdict "must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation . . . ." MCR 2.403(O)(3). "After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation." MCR 2.403(O)(3). The purpose of case evaluation sanctions "is to shift or impose the burden of litigation costs upon the party who insists upon trial by rejecting a mediation award. This is consistent with the intent behind requiring litigants to engage in case evaluation in an effort to encourage settlement and deter protracted litigation." *Van Elslander*, 297 Mich App at 212-213 (citation and quotation marks omitted).

The only dispute in this case is whether plaintiffs accepted or rejected the case evaluation award. As noted above, plaintiffs purported to file a "limited acceptance" to the case evaluation award. In cases such as this where there are multiple parties, additional rules apply to the acceptance and rejection of case evaluation awards. See MCR 2.403(L)(3). Where there are multiple parties, each party has the option of accepting all of the awards covering the claims by or against the party, or of accepting some of the awards and rejecting others. MCR 2.403(L)(3)(a). Pertinent to this case, MCR 2.403(L)(3)(b) provides for a limited acceptance as follows:

A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

> (i) all opposing parties accept, and/or
>
> (ii) the opposing parties accept as to specified coparties.

If a party makes a "limited acceptance" under MCR 2.403(L)(3)(b) "and some of the opposing parties accept and others reject, for the purposes of the cost provision of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept." MCR 2.403(L)(3)(c).

In construing MCR 2.403(L)(3)(c), this Court has observed that:

MCR 2.403(L)(3)(c) specifies that "the party who made the limited acceptance is deemed to have rejected as to those opposing parties *who accept*" (emphasis added). This part of the court rule would be rendered nugatory, contrary to the rules of construction, if the limited acceptance party was also deemed a rejecting party with respect to opposing parties *who reject.* Further, the purpose of the mediation sanction rule is to encourage settlement and deter protracted litigation by placing the burden of litigation costs upon the party that required that the case proceed toward trial by rejecting the mediator's evaluation. . . . [U]nder the language of MCR 2.403(L)(3)(c), a party who makes a limited acceptance of an award is deemed to have rejected it only with respect to those opposing parties who accepted, but not with respect to those who rejected, the award. [*Dykes v William Beaumont Hosp*, 246 Mich App 471, 484-485; 633 NW2d 440 (2001).]

We find that the trial court correctly ruled that plaintiffs' purported "limited acceptance" did not conform with the court rules and therefore constituted a rejection of the panel's case evaluation award. "When a party's response [to a case evaluation award] does not conform to the court rules, the trial court should deem it a rejection." *Merc Bank Mtg Co, LLC v NGPCP/BRYS Centre, LLC*, 305 Mich App 215, 224; 852 NW2d 210 (2014). See also *Bush v Mobil Oil Corp*, 223 Mich App 222, 227; 565 NW2d 921 (1997), overruled on other grounds *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 557; 640 NW2d 256 (2002) (holding that a conditional response that does not comply with the court rules is deemed a rejection of the case evaluation award). Plaintiffs' response to the case evaluation award placed two conditions on acceptance: (1) free and clear title to the property was conveyed to plaintiffs; and (2) all opposing parties accept the case evaluation award in its entirety. Pursuant to MCR 2.403(L)(3)(b), the second condition imposed by plaintiff, i.e., that all opposing parties accept, was an appropriate condition under the court rules in a case, such as this one, involving multiple parties. However, plaintiffs have not cited, nor does there exist, a provision of the court rules that would permit plaintiffs' first condition, i.e., that free and clear title to the property pass to plaintiffs. Such a conditional acceptance was invalid under the court rules and constituted a rejection of the case evaluation award. See *Bush*, 223 Mich App at 226 ("The court rules do not provide for conditional acceptance."). See also *Mercantile Bank Mtg Co*, 305 Mich App at 224 (explaining that an improper response to a case evaluation award constitutes a rejection of the award). Because plaintiffs' response was appropriately deemed a rejection of the case evaluation

award, and because there is no dispute that defendants received a more favorable result at trial, the trial court was required to impose case evaluation sanctions. See MCR 2.403(O)(1).

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra