*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED EDUCATORS INSURANCE,

        Plaintiff/Counterdefendant,

v

MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES,

        Defendant/Cross Defendant-Appellee,
and

TODD MATTHEW MOYER,

        Defendant,
and

WILLIE WILLIAMS and STEPHANIE JOHNSON,
Co-Personal Representatives of the ESTATE OF
GLADYS JOHNSON, and ZACHARY
DICKINSON, Personal Representative of the
ESTATE OF ZAKIRA JOHNSON,

        Defendants/Counterplaintiffs/Cross
        Plaintiffs-Appellants.

UNPUBLISHED
December 22, 2022


No. 359324
Court of Claims
LC No. 20-000203-MK

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

      Defendants/cross-plaintiffs Willie Williams and Stephanie Johnson, co-personal representatives of the Estate of Gladys Johnson, and Zachary Dickinson, personal representative of the Estate of Zakira Johnson (the Estates), appeal as of right a decision of the Court of Claims granting defendant/cross-defendant the Michigan State University Board Of Trustees' motion for

summary disposition according to MCR 2.116(C)(10) (no genuine issue of material fact).[1]  We affirm.

## I.  BACKGROUND

Todd Moyer was employed as an associate strength and conditioning coach for MSU's men's basketball program.  His duties included evaluating the need for, and overseeing procurement of, strength and conditioning equipment.  A strength and conditioning coach at the University of Dayton, Casey Cathrall, had posted notice of two pieces of equipment for sale on the Internet and Moyer contacted Cathrall, expressing an interest in the equipment.  On July 14, 2017, Moyer was driving to Ohio to purchase a piece of equipment from Cathrall when, while still in Michigan, he caused an automobile accident, killing Gladys Johnson and her daughter, Zakira. The Estates filed a lawsuit against Moyer and MSU in the Court of Claims, and MSU was granted summary disposition according to MCR 2.116(C)(7) (claim barred by governmental immunity).

In this case, plaintiff filed a complaint against MSU, Moyer, and the Estates, seeking declaratory judgment that Moyer had no insurance coverage available to him under their policy that insured MSU.  The Estates filed a counterclaim, seeking a declaration that Moyer was insured under plaintiff's policy with MSU at the time of the accident, and that plaintiff was required to indemnify Moyer in connection with any judgments against him.  The Estates also filed this cross-claim against MSU, seeking a declaration that Moyer was covered under MSU's employee indemnification policy at the time of the accident, under which Moyer was entitled to indemnification and defense.  Plaintiff moved for summary disposition under MCR 2.116(C)(9) and (10) and MSU also moved for summary disposition, citing MCR 2.116(C)(7) and (10).  The Court of Claims concluded that defendant Todd Moyer was not covered under the indemnification policy of his former employer, MSU, because he was not acting on behalf of MSU when he was involved in a fatal car accident.  The Court of Claims thus granted plaintiff and MSU's motions under MCR 2.116(C)(10).

On appeal, the Estates argue that the Court of Claims erred by finding no genuine issue of material fact that Moyer was not operating in his capacity of employment for MSU at the time of the accident.  MSU defends the Court of Claims' judgment, and alternatively argues that the Estates' cross-claim was barred by lack of standing, res judicata, and the applicable statute of limitations, such that it would have been entitled to summary disposition under MCR 2.116(C)(7). We agree with the Court of Claims that Moyer was not acting as MSU's employee at the relevant time, and also agree with MSU that the statute of limitations had expired before the Estates filed the cross-claim.

## II.  STANDARD OF REVIEW

---

[1] The Court of Claims also granted plaintiff's motion for summary disposition because "there is no insurance coverage available to defendant Todd Matthew Moyer under the policy identified in this case."  Plaintiff, United Educators Insurance, was dismissed by stipulation of the parties.

A trial court's determination on a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). MCR 2.116(C)(10) authorizes summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. When reviewing a motion brought under subrule (C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). The moving party must identify, with evidentiary support, issues for which there are no genuine issues of material fact before the nonmoving party has the burden to produce evidence showing otherwise. MCR 2.116(G)(4); *MLive Media Group v Grand Rapids*, 321 Mich App 263, 269; 909 NW2d 282 (2017).

MCR 2.116(C)(7) authorizes summary disposition on the basis of the statute of limitations. In considering a motion under (C)(7), the court again considers the pleadings, admissions, and evidence in the light most favorable to the nonmoving party. *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245-246; 590 NW2d 586 (1998).

## III. INDEMNIFICATION CLAUSE

MSU had the following indemnification policy:

> Michigan State University will support its trustees, officers, faculty, and staff when acting in the performance of assigned duties on behalf of the University. This policy also applies to students while engaged in approved academic programs and volunteers who are performing services for the University with prior written approval of the appropriate University official. The University will defend, save harmless, and indemnify such persons against any suit or proceeding, wherever brought, premised upon the fact that he or she is or was a member of the Board or an officer, employee, student, or volunteer of the University. The indemnity extends to expenses including attorney fees, judgments, fines, and amounts paid in settlement, actually and reasonably incurred, and with respect to any criminal action or proceeding where such person had no reasonable cause to believe that his or her conduct was unlawful. As a condition of indemnification, the trustee, official, employee, student, or volunteer is required to cooperate fully on a continuous basis with the University Attorney and the Office of Insurance and Risk Management.

MSU's General Counsel opined that, in order to be covered by the policy, an individual had to be engaging in the performance of MSU-assigned duties.

The Estates cannot establish a genuine issue of material fact whether Moyer could have reasonably believed that his conduct causing the accident was lawful, or that he was performing an assigned duty for MSU at the time. In the first instance, as a result of his accident, Moyer was found guilty two counts of reckless driving causing death, and ordered to serve concurrent sentences of 7 years and 2 months to 15 years in prison. It would thus not have been reasonable for Moyer to believe that the conduct resulting in these convictions was lawful.

With regard to whether Moyer was "acting in the performance of assigned duties" for MSU, the Estates note that one of Moyer's job responsibilities was to "oversee procurement of"

-3-

strength and conditioning equipment, and that he was on his way to purchase equipment from the University of Dayton at the time of his accident. The Estates claim that these facts create a genuine issue of material fact regarding whether Moyer was driving to Dayton as a part of his duties for MSU. However, the evidence considered as a whole, leaves no reasonable question regarding whether Moyer was traveling for MSU's, as opposed to his own, purposes.

In order for Moyer to travel, or purchase strength and conditioning equipment, for MSU, he needed permission from MSU. There is no evidence that he sought or received authorization from MSU for travel or purchase related to his July 14, 2017 trip. MSU's travel policy stated that "[p]re-trip authorization" was required for any employee "traveling on behalf of Michigan State University." MSU's General Counsel stated that an employee would generally need permission to travel, and permission in the form of a purchase order to make purchases on behalf of the university. The chief financial officer for the MSU Athletic Department testified at deposition that purchases had to be approved by appropriate financial officers, with the seller then listed as a vendor on an invoice to be paid by accounting. The financial officer added that business travel would be approved after submitting forms to a supervisor, which would then be sent to the business office, and that no such forms were located in connection with Moyer's trip to Ohio.

Casey Cathrall testified that he was selling exercise equipment from the University of Dayton (in which Moyer had expressed interest) through an Internet service. He continued that he did not know whether Moyer had the authority to purchase equipment for MSU, or who had authority at MSU to authorize such a thing. He added that he had exchanged texts with Moyer indicating that Moyer was going to pay by personal check and an invoice could be sent to his home.

MSU's head strength and conditioning coach, Kenneth Mannie, testified that he supervised Moyer, and also the assistant strength and conditioning coach for football, Mike Vorkapich, who preceded Moyer in working with the basketball team. Mannie and Vorkapich explained that there was a standard procedure for Moyer to purchase equipment. Mannie explained that, in 2016 and 2017, Moyer was attempting to equip a new conditioning room with new equipment, and purchases had to be approved by himself and also an associate athletic director.

Vorkapich stated that, in his last discussion with Moyer about the equipment, he told Moyer that he would need an invoice or purchase order in advance of purchasing the equipment, as well as Mannie's approval. Vorkapich testified that neither he, nor Mannie, asked Moyer to travel to Ohio or to purchase a pulldown machine. Mannie confirmed that he did not authorize purchasing the equipment in which Moyer expressed. The financial officer stated that she did not find any authorization for Moyer's trip to Ohio. The evidence thus consistently indicated that Moyer was not traveling to Ohio on July 14, 2017, on MSU business.

Indemnity cases "must ultimately be determined by the contract terms to which the parties have agreed." *Grand Trunk Western R, Inc v Auto Warehousing Co*, 262 Mich App 345, 351; 686 NW2d 756 (2004). While the Estates argue that the indemnity policy did not require strict compliance with procurement procedures, we note that it does require "the performance of assigned duties on behalf of the University." Although it is possible that, in his own mind, Moyer was acting on behalf of MSU while taking liberties with the university's protocols for procurement and travel, in light of Moyer's failure to obtain authorization for travel to Ohio, or to purchase the

particular equipment there, any such private understanding on Moyer's part would have been baldly speculative. And, the Estates do not argue that coverage under MSU's policy can be triggered solely by such speculation with no participation on the part of other MSU operatives with attendant responsibilities.

Further, the evidence indicated that Moyer was not attending to his duties to MSU on the day of the accident. Mannie and Vorkapich testified that the training of athletes continues in the summer, and that work hours were dependent on the needs of the program. Vorkapich stated that coaches would tell Mannie, and the team's head coach, if they were going to take a day off. MSU's Director of Basketball Operations submitted an affidavit stating that, after an early-morning workout on July 14, 2017, all players and coaches who were not out of town recruiting, including Moyer, were free of basketball-program responsibilities until July 17, 2017.

The Estates nevertheless argue that e-mails from Cathrall showed a genuine issue of material fact regarding whether Moyer was buying the equipment for MSU. Moyer sent an online message to a seller asking if the individual would "take 700.00 for both of the rogers pulldowns??" and adding, "I could come and pick them up." On July 8, 2017, Moyer corresponded with Cathrall by text, asking whether the "lat pulldown" equipment remained for sale, and whether there was more such equipment for sale. Moyer gave a non-university address to Cathrall to record on the invoice but stated that he was emailing the invoice to his work address.

Cathrall initially testified that Moyer was purchasing the machines for MSU's basketball weight room, but later testified that he did not actually know whether MSU was buying used equipment for the new weight room. Cathrall clarified that he assumed that Moyer was purchasing the equipment for the MSU basketball training room. Cathrall identified an e-mail that he forwarded to Vorkapich the morning of July 14, 2017, which contained an invoice for a lat pulldown machine. He initially testified that he did not recall how Moyer was going to pay for the machine, but later testified that he had exchanged texts with Moyer indicating that Moyer was going to pay by check after an invoice was sent to his home. Cathrall added that the University of Dayton asked him to generate an invoice for the equipment that Moyer was going to purchase, and that he did not know who Kenneth Mannie was. Cathrall's statement that Moyer was going to purchase equipment for MSU's weight room was not evidence that Moyer was pursuing the equipment on behalf of MSU, because Cathrall clarified that he did not have personal knowledge of Moyer's intentions, and that his expectation in that regard was mere assumption.

The Estates argue that the Court of Claims impermissibly discredited Cathrall's testimony as "speculative," and credited the testimony of Mannie and Vorkapich. It is true that a trial court "is not permitted to assess credibility, or to determine facts on a motion for summary judgment," but rather its function "is to review the record evidence, and all reasonable inferences" to evaluate whether a genuine issue of any material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). However, the Court of Claims stated that it "assumes that Cathrall testified truthfully, and that Moyer represented [to him] that the pulldown machines were intended for an MSU facility," then concluded, "Moyer's statements to a third party, however, do not constitute factual evidence that Moyer was acting within the scope of his employment," and that "Cathrall's belief that Moyer planned to purchase the pulldowns for MSU is simply an unsupported opinion, devoid of factual support." The Court of Claims' characterization of Cathrall's testimony about Moyer's intentions as "subjective," and "speculation," was accurate, given Cathrall's admission

-5-

that his impressions were mere assumption, thus not a matter of personal knowledge. The Court of Claims was not judging the veracity of Cathrall's statement, but accurately summarizing it.

Moreover, according to the evidence, Mannie did not know Moyer was traveling to Ohio, and Vorkapich did not know that Moyer was traveling until the morning of July 14, 2017. Further, Vorkapich testified that Moyer had spoken with the football training staff about wanting a lat pulldown machine from Dayton "for himself," and that Moyer asked if the football program wanted another one from that source. Mannie confirmed that he had discussions with Moyer about Moyer's purchasing a lat pulldown for his home, and the Dayton connection's offering a companion piece of equipment that Mannie was interested in but did not purchase. Mannie further stated that the basketball weight room already had a new Rogers pendulum lat combo pulldown machine. The strong evidence that Moyer was purchasing the equipment for his home, and not for MSU, and the lack of evidence to the contrary, indicates that his travel on the day in question was not within the scope of his employment with MSU. The Court of Claims thus did not err in determining that there was no genuine issue of material fact that Moyer was not covered under MSU's indemnification policy at the time of the accident.

## IV. STATUTE OF LIMITATIONS

Alternatively, MSU asserts that the Court of Claims grant of summary disposition could be affirmed because the cross-claim was filed after the period of limitations. The Estates argue that this Court should not consider this issue because MSU did not file a cross-appeal, and the Court of Claims did not decide the issue on its merits. However, arguing an alternative ground for affirming the trial court's decision does not require a cross-appeal, "even if the alternative ground was considered and rejected by the lower court." *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 221; 625 NW2d 93 (2000). Additionally, before it decided the motions for summary disposition, the Court of Claims had determined that the Estates had standing to file a cross-claim against MSU, and that the cross-claim was not barred by res judicata or the statute of limitations.

MCL 600.6452(1) provides that a claim against the state in the Court of Claims must be filed "within 3 years after the claim first accrues." A claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Terlecki v Stewart*, 278 Mich App 644, 652; 754 NW2d 899 (2008). "With respect to a promise to indemnify, the period of limitations runs from when the indemnitee sustained the loss, or "when the promisor fails to perform under the contract." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 458; 761 NW2d 846 (2008) (quotation marks and citations omitted).

In this case, MSU asserted that the limitations period had expired because the claim accrued on the date of the accident, but the Court of Claims stated that it was "without sufficient argument or allegations at this time as to when the claim for indemnification first arose." However, we conclude that the Estates' claim that MSU failed to indemnify Moyer arose when MSU did not defend Moyer in connection with the Estates' August 17, 2017 complaint against Moyer for negligence and wrongful death in the Monroe Circuit Court. MSU was not a party to that case, which was dismissed without prejudice on December 11, 2018, because Moyer was not yet available for deposition.

In this case, the cross-claim on which MSU failed to indemnify Moyer was filed on July 22, 2021 as a part of the Estates' October 7, 2020 lawsuit. Three years from the time that MSU failed to defend Moyer was August 17, 2020, and the Estates had not claimed that MSU failed to indemnify Moyer during that three-year span. The expiration of the applicable statute of limitations thus provides an alternative basis for affirming the result below, even though the Court of Claims did not decide that issue on it merits. See *Zimmerman v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997) (This Court will not reverse when the trial court reaches the correct result, regardless of the reasoning employed).

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola